Dwight E. FREEMAN, Plaintiff–
Appellant,

v.

Warden FRANCIS;  Corrections Officer
Shoemaker;  Nurse Kent, Defendants–
Appellees.

No. 98–4288.

United States Court of Appeals,
Sixth Circuit.

Argued:  Aug. 12, 1999

Decided and Filed:  Oct. 27, 1999

Lisa T. Meeks (argued and briefed), Newman & Meeks, Cincinnati, Ohio, for Plaintiff–Appellant.

Todd R. Marti (argued and briefed), Office of the Attorney General, Corrections Litigation Section, Columbus, Ohio, for Defendants–Appellees.

Before: MERRITT, KENNEDY, and DAUGHTREY, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

Plaintiff Dwight E. Freeman, an inmate at Correctional Medical Center, brought an action pursuant to 42 U.S.C. § 1983 against defendants, all employees of the Medical Center, in their individual capacities. The district court dismissed the complaint for failure to exhaust administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).[1] Plaintiff contends that he is not required to exhaust the prison's administrative remedies because (1) his excessive force claim does not involve a "prison condition" within the meaning of § 1997e(a); (2) he seeks only monetary damages, which are not provided by the Ohio prison grievance procedures; (3) an investigation into the matter by the Ohio State Highway Patrol satisfies the exhaustion requirement and (4) he did in fact exhaust his administrative remedies.

Plaintiff alleges that on July 26, 1997, a corrections officer and a nurse were making medication rounds. Plaintiff, who was recovering from nasal surgery, asked the

---

1. Section 1997e(a), as amended, provides:
   No action shall be brought with respect to prison conditions under section 1983 of this title [i.e., 42], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

nurse for some gauze for his nose. The corrections officer told him to "shut up" and assaulted him. The nurse did nothing to stop the assault or call for help. Plaintiff claims that he suffered a separated shoulder from the incident.

■ Plaintiff first contends that because he seeks solely monetary damages for constitutional deprivations and money damages are not available through the Ohio prison grievance process, he should not be required to exhaust administrative remedies. We have previously held that so long as the prison system has an administrative process that will review a prisoner's complaint even when the prisoner seeks monetary damages, the prisoner must exhaust his prison remedies. *Wyatt v. Leonard,* 193 F.3d 876 (6th Cir.1999) (state prisoner seeking monetary damages must exhaust); *Lavista v. Beeler,* 195 F.3d 254, 256–57 (6th Cir.1999) (federal inmate seeking monetary, injunctive and declaratory relief must exhaust). As we explained, although it may make sense to excuse exhaustion of the prisoner's complaint where the prison system has a flat rule declining jurisdiction over such cases, it does not make sense to excuse the failure to exhaust when the prison system will hear the case and attempt to correct legitimate complaints, even though it will not pay damages.

■ Plaintiff then argues that the language in the statute, "no action shall be brought with respect to prison conditions," does not apply to assaults or excessive force claims on prisoners by prison officers. Neither the Supreme Court nor any circuit court has directly addressed this issue, although we note that at least three circuit courts, including our own, have held, without discussing the precise issue raised by plaintiff herein, that claims of excessive force must be exhausted. *Wen-*

*dell v. Asher,* 162 F.3d 887 (5th Cir.1998); *Brown v. Toombs,* 139 F.3d 1102 (6th Cir.), cert. denied, —— U.S. ——, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998); *Garrett v. Hawk,* 127 F.3d 1263 (10th Cir.1997); *see also White v. McGinnis,* 131 F.3d 593 (6th Cir. 1997) (exhaustion required where the prisoner brought a claim of retaliation). The district courts that have addressed the issue are divided on whether exhaustion is required. Compare *Johnson v. Garraghty,* 57 F.Supp.2d 321, 325–26 (E.D.Va. 1999); *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 888–92 (S.D.N.Y. 1998); *Moore v. Smith,* 18 F.Supp.2d 1360, 1363 (N.D.Ga.1998); *Morgan v. Arizona Dep't of Corrections,* 976 F.Supp. 892, 895–96 (D.Ariz.1997) (exhaustion required) with *Baskerville v. Goord,* No. 97 CIV. 6413, 1998 WL 778396 at *3 (S.D.N.Y. Nov. 5, 1998); *White v. Fauver,* 19 F.Supp.2d 305, 313–15 (D.N.J.1998) (exhaustion not required).

■ The phrase "action ... with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2),[2] which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions by government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." Defendants argue that Congress intended those additional words to include an act such as excessive force by a prison guard. It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. *Commissioner*

---

2. Section 3626(g)(2) provides:
   The term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

*v. Lundy*, 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

■ Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

A Supreme Court case decided before passage of the Reform Act holds that the statutory language "prisoner petitions challenging conditions of confinement," includes both ongoing practices *and* specific acts of misconduct like those alleged here by plaintiff. *McCarthy v. Bronson*, 500 U.S. 136, 139–43, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991) (language in the Magistrate's Act regarding referral of cases to magistrate judge included isolated episodes of misconduct by prison officials, including assault, as well as ongoing misconduct). We therefore agree with those courts that have held that the term "prison

conditions" as used in § 1997e includes claims of excessive force and hold that the scope of § 1997e(a)'s exhaustion requirement is determined by the definition of a "civil action with respect to prison conditions" as set forth in § 3626(g)(2).

■ Plaintiff's final argument contends that he exhausted available administrative remedies. First, he argues that an investigation by the prison Use of Force Committee and the Ohio State Highway Patrol into the alleged assault satisfies § 1997e(a) because the statute does not specify that exhaustion must be through the prison's grievance procedure. However, as pointed out by plaintiff in his brief, the procedures for filing a "use of force" report are usually employee-initiated, not prisoner-initiated. Ohio Admin. Code §§ 5120–9–02(A), (B). Here, the guard responsible for the attack did not file a "use of force" report and the investigation by the Highway Patrol was initiated some other way.[3] This demonstrates the importance of using the prison grievance process in order to alert prison officials to problems. In any event, the exhaustion requirement in § 1997e(a) is directed at exhausting the *prisoner's* administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute.

■ Plaintiff then argues that he attempted to exhaust his administrative remedies through the prison's grievance procedures.[4] Plaintiff's claim arose on July 26,

---

**3.** We note that there is a procedure for a prisoner-initiated "use of force" investigation where the prison employee fails to file a report. Ohio Admin. Code § 5120–9–03. However, the record herein does not reflect how the investigation was commenced in this case.

**4.** The Ohio Administrative Code requires an inmate to first attempt to resolve the grievance by contacting in person or in writing the appropriate institutional department or staff member whose area of responsibility is related to the grievance. Ohio Admin. Code § 5120–9–31(F). If the grievance is not resolved to the satisfaction of the inmate, he or she may, in writing or in person, notify the

inspector of institutional services of his grievance. *Id.* Either the inspector or the inmate may require that the grievance be stated in detail on a form provided for that purpose. *Id.* § 5120–9–31(H)(2). If the grievance is not resolved by the institutional inspector within 10 working days, the inspector must notify the inmate in writing of the reasons for the extension and send a copy to the chief inspector. If the grievance is not resolved within 15 working days, the inmate is entitled to file a grievance directly with the chief inspector unless the inmate has agreed in writing to an extension of time for a response. Any extension beyond 30 days must be approved by the chief inspector. *Id.* § 5120–9–

1997, well after passage of the Prison Litigation Reform Act. This is not a case where the event giving rise to the claim occurred before passage of the Act, thereby raising questions about whether it is fair to require the prisoner to know that administrative remedies must be exhausted before filing a complaint in federal court. According to Plaintiff's own chronology of events, on July 27, 1997, the day after the assault, Plaintiff submitted an Informal Complaint Resolution Form to the Captain's office concerning the assault. He sent another informal grievance to a nurse notifying her that he had been assaulted. On Friday, August 1, 1997, apparently without acknowledgment from prison officials of his informal complaints, he filed a formal grievance with the Institutional Inspector as required by Ohio Admin. Code § 5120–9–31(F). On August 17, before the time for the Institutional Inspector to respond had expired, plaintiff appealed to the Chief Inspector. Then on August 28, 1997, before the time for the Chief Inspector to respond had expired, and well before expiration of the 90–day period allotted for the grievance process by Ohio Admin. Code § 5120–9–31(H)(8), plaintiff filed his complaint in federal court. After more correspondence between plaintiff and prison officials, the Institutional Inspector responded to plaintiff's formal grievance on October 31, 1997, informing him that the Ohio State Highway Patrol had investigated and criminal charges were pending against the guard that assaulted Plaintiff. The Disposition of Grievance informed Plaintiff that he had five working days to appeal to the Chief Inspector. *Id.* Plaintiff never appealed to the Chief Inspector.

While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court ("No action shall be brought ... until such administrative remedies as are available are exhausted."). *Brown v. Toombs,* 139 F.3d 1102 (6th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998). The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit. *Larkins v. Wilkinson,* 1998 WL 898870 at *2 (6th Cir. Dec. 17, 1998) (unpublished). In *Larkins,* we dismissed the plaintiff's complaint where his "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a) which requires exhaustion ... *prior* to filing suit in federal court." (Emphasis added.) *See also Perez v. Wisconsin Dep't of Corrections,* 182 F.3d 532, 533 (7th Cir. 1999) (case remanded with instruction to dismiss for failure to exhaust administrative remedies).

For the foregoing reasons, we remand the case to the district court and direct that the plaintiff's case be dismissed without prejudice for failure to exhaust administrative remedies.

---

31(H)(5). If resolution of the grievance is not within the authority of the institutional inspector, the inspector shall submit findings and recommendations to the managing officer for endorsement, modification or disapproval. The managing officer must respond to the institutional inspector within 10 working days. *Id.* § 5120–9–31(H)(6). If the inmate is dissatisfied with the resolution of his or her grievance, he or she may within five working days of receipt of written notice of the resolu-

tion, appeal in writing to the chief inspector upon a form provided for that purpose. The chief inspector must notify the inmate of the decision on appeal within 20 working days. If the chief inspector requires additional time, he or she must notify the inmate in writing of the reasons for the delay. The grievance process from initiation to final disposition shall not exceed 90 days, unless the inmate agrees in writing to an extension for a fixed period. *Id.* § 5120–9–31(H)(8).