Fred **TREESH**, et al., Plaintiffs,

v.

Bob **TAFT**, et al., Defendants.

No. C–2–99–624.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 16, 2000.

Kevin Francis O'Neill, Cleveland-Marshall College of Law, Cleveland, OH, for plaintiffs.

Todd Robert Marti, Ohio Attorney General, Corrections Litigation, Columbus, OH, for defendants

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on Defendants' second motion to dismiss. Defendants move to dismiss this case on the ground that Plaintiffs have not exhausted their administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I. BACKGROUND

This case involves a First Amendment challenge to an Ohio prison policy that regulates the last statements of condemned prisoners. Am. Compl. at ¶ 1. The policy, known as SOCF W–05–94, prohibits death row inmates from making a final oral statement, audible to spectators,

in the moments before their executions. *Id.* at ¶ 2. Rather, if a death row inmate wishes to make a last statement, he must do so in writing approximately six hours before his scheduled execution. *Id.* at ¶¶ 18–20. If the inmate chooses to write out a statement, the statement will be delivered to the warden and typed. *Id.* at Ex. A. The policy provides that the typed statement will not be distributed and read until after the inmate is executed. *Id.*

Plaintiffs in this case are two death row inmates who wish to make a final statement in the moments before their executions. *Id.* at ¶¶ 8–9. Plaintiffs name as Defendants Bob Taft, Governor of the State of Ohio; Stephen Huffman, Warden of the Southern Ohio Correctional Facility at Lucasvile, Ohio, where all Ohio executions take place; and Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Correction. *Id.* at ¶¶ 10–12. All Defendants are sued solely in their official capacities. *Id.*

Plaintiffs assert two constitutional challenges to the policy. In Count I of the Amended Complaint, Plaintiffs challenge the policy on its face. They contend that death row inmates have an affirmative constitutional right to make a last oral statement in the moments before execution. According to Plaintiffs, the policy, on its face, violates the First Amendment because it deprives death row inmates of freedom of speech and "affords condemned prisoners no opportunity to make a last oral statement, audible to spectators, after being led into the death chamber for their final minutes of life." *Id.* at ¶ 2. Plaintiffs' second challenge focuses on the way the policy will be carried out. In Count II of the Amended Complaint, Plaintiffs assert that the policy violates the First Amendment because the warden "enjoys complete editorial control over the prisoner's statement, with unfettered discretion to change it, cut it, summarize it, or censor it altogether." *Id.* at ¶ 3. Thus, Plaintiffs assert both a facial attack and an as-applied challenge to the policy. Plaintiffs seek declar-

atory and injunctive relief barring Ohio officials from enforcing the policy and requiring them to restore to condemned prisoners the opportunity "to communicate their last words as they stand on the brink of extermination." *Id.* at ¶ 4.

On April 25, 2000, Defendants filed the instant motion to dismiss. (Doc. # 12.) That motion is currently before the Court for consideration.

## II. ANALYSIS

Defendants contend that this case concerns "prison conditions" and must be dismissed pursuant to the PLRA because Plaintiffs failed to exhaust the administrative remedies available to them. Specifically, Defendants assert that § 5120–9–31 of the Ohio Administrative Code sets forth a procedure for the resolution of prisoner grievances. According to Defendants, Plaintiffs do not allege or attach any documentation establishing that they did in fact exhaust their administrative remedies.

In their memorandum in opposition to Defendants' motion to dismiss, Plaintiffs advance two separate reasons why this Court should not dismiss their Amended Complaint for failure to exhaust their administrative remedies. (Doc. # 13.) First, Plaintiffs contend that the PLRA only requires exhaustion in cases concerning "prison conditions." (*Id.* at 3). According to Plaintiffs, "the plain language of the statute, the prevailing judicial interpretation of the term 'prison conditions,' and the legislative history of the PLRA, make it clear that this is not a 'prison conditions' case" and exhaustion is not required. (*Id.*) In the alternative, Plaintiffs argue that "even if this is a prison conditions case, there is no available administrative remedy for Plaintiffs to exhaust their claims." (*Id.*)

In resolving the instant motion to dismiss, the Court will first examine the PLRA as well as the relevant case law interpreting its provisions in order to determine whether the instant dispute is a

case involving prison conditions. The Court will then examine Plaintiffs' argument that there are no administrative remedies available to them.

## A. The PLRA

■ Congress enacted the PLRA "to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems." *Freeman v. Francis,* 196 F.3d 641, 643 (6th Cir.1999). In order to accomplish this goal, the PLRA requires prisoners to first exhaust any administrative remedies available to them before filing suit in federal court with respect to "prison conditions." *Id.* at 644. Specifically, the PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

■ Under § 1997e(a), exhaustion is "a precondition to filing an action in federal court" and a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman,* 196 F.3d at 645. If a prisoner has not satisfied this precondition, "[d]istrict courts should enforce the exhaustion requirement sua sponte if not raised by the defendant" and refrain from "prematurely decid[ing] the merits of any such action." *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir. 1998). If a prisoner has satisfied the exhaustion requirement, he "should attach to his [ ] complaint the administrative decision, if it is available, showing the administrative disposition of his complaint." *Id.*

In order to determine whether a case is subject to the exhaustion requirement set forth in § 1997e(a) of the PLRA, a court must determine whether the case challenges "prison conditions." In *Freeman v. Francis,* 196 F.3d 641 (6th Cir.1999), the Sixth Circuit examined the definition of "prison conditions." The Sixth Circuit began its analysis with the plain language of the statute, noting that although Congress did not define "prison conditions" in § 1997e(a), that phrase is defined in 18 U.S.C. § 3626(g)(2), another section of the PLRA. *See Freeman,* 196 F.3d at 643. The Sixth Circuit then looked to the plain language of § 3626(g)(2) for the definition of prison conditions because "[i]t is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places." *Id.*

Section 3626(g)(2) defines "prison conditions" as follows:

the term 'civil action with respect to prison conditions' means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2). Thus, under this provision, "prison conditions" is defined in two separate ways. First, a civil action involves prison conditions if the action challenges the "conditions of confinement." *Id.* Second, a case involves prison conditions if it challenges the "effects of actions by government officials on the lives of persons confined in prison." *Id.*

### 1. Application to the Instant Matter

■ Plaintiffs argue that the instant action does not meet either of the definitions of prison conditions set forth in § 3626(g)(2). According to Plaintiffs, their First Amendment rights will not be violated until after they have been executed. They contend that because their rights will not be violated until after their death, this case does not concern "conditions of confinement" or the "effects" of government officials on their "lives." (Doc. # 13 at 5.)

However, upon careful review of the pleadings in this case, the Court finds that Plaintiffs are actually challenging actions that will occur both before and after they

are executed. Specifically, in Count I of the Amended Complaint, Plaintiffs are challenging the fact that they will not be permitted to actually make a last oral statement prior to their executions. This claim clearly challenges the "effects" of "actions" that will occur prior to the time when Plaintiffs will actually be executed. Because the alleged deprivation of Plaintiffs' First Amendment rights will occur prior to their executions, the Court finds that Count I of the Amended Complaint satisfies the definition of "prison conditions" set forth in the PLRA.

■ With respect to Count II of the Amended Complaint, the Court finds that Plaintiffs are also challenging actions that will occur after they are executed. That is, in Count II, Plaintiffs allege that the warden enjoys "unfettered discretion" to change, cut, summarize or censor their written statements after they are executed. Because any possible editing will occur after the Plaintiffs are executed, Count II does not meet the definition of "prison conditions" and is not subject to the PLRA's exhaustion requirement. Stated differently, the PLRA is inapplicable to Count II because at the time that the alleged deprivation will occur, Plaintiffs will no longer be "prisoners" who are "confined" and any possible editing will not affect their "lives." Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Count II of the Amended Complaint.

### 2. The Legislative History of the PLRA

Plaintiffs argue that even if their claims satisfy the definition of "prison conditions" set forth in § 3636(g)(2), requiring exhaustion in this case would be inconsistent with the legislative history of the PLRA. In particular, Plaintiffs appear to allege that Congress enacted the PLRA solely to reduce the number of frivolous lawsuits filed in federal court and because this case is not frivolous, the exhaustion requirement should not apply. The Court finds this

argument to be without merit for two reasons.

■ First, this Court need not look to the legislative history of the PLRA because the language of the statute is clear and unambiguous. Where, as here, the language of a statute is unambiguous, that language is controlling and "judicial inquiry is complete, except in 'rare and exceptional circumstances.'" *Garcia v. U.S.,* 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (quoting *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). Thus, courts seek guidance from the legislative history only when the language of the statute is ambiguous or a literal reading of the statute would produce an absurd result. *See Garcia,* 469 U.S. at 75, 105 S.Ct. 479 (Rehnquist, J.) ("[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language.").

■ In this case, the plain language of the statute does not limit the application of the exhaustion requirement to frivolous cases. To the contrary, the PLRA's exhaustion requirement is expressly inapplicable to frivolous cases. In § 1997e(c), Congress created an express exception to the exhaustion requirement for cases that appear frivolous on their face. Specifically, § 1997e(c)(2) provides as follows:

(c) Dismissal

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c). Thus, Plaintiffs' argument that only frivolous cases are subject to the PLRA is without merit because the plain language of the PLRA specifically excludes frivolous cases from the exhaustion requirement.

However, even if this Court were to seek guidance from the legislative history, the Court would still conclude that Count I should be dismissed for failure to exhaust administrative remedies. As Plaintiffs correctly note, the desire to reduce frivolous lawsuits was a motivating factor behind the enactment of the PLRA. However, that desire was not the only motivation behind the statute. As the Sixth Circuit noted in *Freeman*, the desire to "reduce the intervention of federal courts into the management of the nation's prison systems" is an additional, and equally important, purpose underlying the PLRA. *Freeman*, 196 F.3d at 643. Thus, the legislative history supports the position that exhaustion is required in all cases so that prison officials may attempt to resolve the concerns of prisoners before being hailed into federal court. Therefore, requiring exhaustion in this case will actually further the legislative intent behind the statute because it will allow prison officials to respond to Plaintiffs' complaints about the policy in question before being required to defend the policy in this Court.

### B. Availability of Administrative Remedies

Having determined that Count I of the Amended Complaint is subject to the exhaustion requirement of § 1997e, the Court must now determine whether there are any "available" administrative remedies for Plaintiffs to exhaust. Plaintiffs contend that there are not. According to Plaintiffs, the administrative procedures available to them preclude the opportunity for meaningful review and therefore, the exhaustion requirement should be excused in this case. In order to better understand Plaintiffs' argument, the Court will now examine the relevant provisions of the Ohio Administrative Code.

Section 5120–9–31 of the Ohio Administrative Code outlines the inmate grievance procedure used in the state of Ohio. Subsection (B) of § 5120–9–31 provides that the grievance procedure may be used by any inmate, regardless of his security or disciplinary status, to raise concerns about "departmental or local institutional policies, procedures, rules and regulations or the application of any of these to the grievant." Ohio Admin. Code § 5120–9–31(B). Under the grievance procedure, the Chief Inspector is responsible for reviewing and disposing of all grievances "directed against a managing officer or inspector of institutional services." Ohio Admin. Code § 5120–9–30(G). Thus, the Chief Investigator would be the investigating officer in this case.

In addition, § 5120–9–30(D)(13) charges the Chief Inspector with the duty of reviewing every proposed addition to or revision of the administrative rules of the Department of Corrections. The Chief Inspector must review the proposed additions or revisions and "indicate in writing to the director whether in his opinion the proposed rule would be a potential source of grievances; and if so, shall propose such amendments as are warranted." *Id.* § 5120–9–30(D)(13). However, the authority of the Chief Inspector to review proposed changes "shall not preclude the issuance of administrative rules by the director contrary to the opinion of the chief inspector." *Id.*

Against this backdrop, Plaintiffs urge the Court to conclude that the administrative remedies available to them preclude the opportunity for meaningful review. In support of their position, Plaintiffs first contend that the Chief Inspector will conduct a biased review of their grievance because under § 5120–9–30(D)(13), he has already approved the policy in question. Second, Plaintiffs argue that even if the Chief Inspector conducts an unbiased review, exhaustion would be futile because under § 5120–9–30(D)(2), the Chief Inspector only has authority to make recommendations as to how a particular grievance should be resolved and the director is free to reject his recommendations. The Court will address each of Plaintiffs' arguments in turn.

## 1. Section 5120–9–30(D)(13)

As stated in the previous section of this Opinion and Order, the Chief Inspector is responsible for reviewing proposed changes to administrative rules and he must make a recommendation to the director as to whether the proposed rule would be a potential source of grievances. *See* Oh. Admin. Code § 5120–9–30(D)(13). According to Plaintiffs, because the Chief Inspector must review all proposed changes, the policy at issue in this case "has already been reviewed and approved by the same person who would investigate [their] grievances" and "[a]s such, there is no administrative remedy for [them] to pursue." (Doc. # 13 at 11.) The Court finds this argument to be without merit for two reasons.

First, Plaintiffs overlook the fact that § 5120–9–30(D)(13) only authorizes the Chief Inspector to review proposed revisions or additions to administrative rules, not institutional policies such as the one challenged in this case. Because the policy at issue is not an administrative rule, the Chief Inspector is not authorized to review it under subsection (D)(13). Accordingly, the threat of bias is not present in this case, as there is no evidence that the Chief Inspector has ever reviewed the policy in question.

■ Second, even if the Chief Inspector has reviewed the policy challenged in this action, there is no evidence to suggest that his subsequent review would be biased. The fact that the Chief Inspector has reviewed an administrative rule does not mean that he is precluded from resolving a grievance with respect to the application of that rule in favor of an inmate. When the Inspector reviews a proposed revision or addition to an administrative rule under subsection (D)(13), the Inspector reviews that rule in a vacuum—he must review the rule solely to determine whether it will likely generate grievances. On the other hand, when the Inspector reviews an individual inmate grievance, he is reviewing the application of a particular rule in the context of an actual complaint in a concrete factual setting. This review is quite distinct from that contemplated by § 5120–9–30(D)(13). Accordingly, the Court finds that § 5120–9–30(D)(13) does not render the inmate grievance procedure meaningless.

## 2. Section 5120–9–30(D)(2)

■ In their second challenge to the grievance procedure, Plaintiffs contend that under § 5120–9–30(D)(2), the Inspector lacks final authority to resolve inmate grievances. Specifically, Plaintiffs challenge the fact that the Inspector only has the authority to make recommendations with respect to how a particular grievance should be resolved. Plaintiffs contend that because the Inspector only has authority to make recommendations, the director is free to "reject any opinion, advice, or recommendation of the Chief Inspector." (Doc. # 13 at 11.) According to Plaintiffs, "[p]roviding inmates with a grievance procedure that lacks authority to resolve the grievance or enact rule changes provides the inmates with no avenue to seek administrative relief." (*Id.* at 12.) The Court also finds this argument to be without merit.

Plaintiffs are essentially waging a facial attack against the inmate grievance procedure. However, in *Freeman*, the Sixth Circuit found this same procedure to be an adequate administrative remedy for purposes of exhaustion under the PLRA. *See* 196 F.3d at 645 n. 4 (explaining Ohio's inmate grievance procedure and dismissing the plaintiff's complaint for failing to complete it). Because the Sixth Circuit has found the grievance procedure at issue in this case to be an "available" administrative remedy, the Court finds Plaintiffs' argument to be without merit. Plaintiffs must exhaust the inmate grievance procedure before bringing their claim contained in Count I of the Amended Complaint in this Court. Accordingly, the Court **DISMISSES** that count **WITHOUT PREJUDICE**.

## IV. CONCLUSION

Upon consideration and being duly advised, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' second motion to dismiss. In particular, the Court **GRANTS** Defendants' motion with respect to Count I of the Amended Complaint and the Court **DISMISSES** that count **WITHOUT PREJUDICE.** With respect to Count II of the Amended Complaint, the Court DENIES Defendants' motion. Count II is not subject to the exhaustion requirement of the PLRA.

**IT IS SO ORDERED.**