

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-2006

# Almahdi v. Secretary Homeland

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3120

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Almahdi v. Secretary Homeland" (2006). *2006 Decisions*. Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-3120
_____

JAMALUD-DIN ALMAHDI,

Appellant

v.

THOMAS RIDGE, SECRETARY OF DEPARTMENT
OF HOMELAND SECURITY; JOHN ASHCROFT;
DEPARTMENT OF HOMELAND SECURITY;
GABE SCALA; TONY MALOCU; S. A. YATES;
LYONS; SLODYSKO; BUREAU OF PRISONS

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 03-cv-00432)
District Judge: Honorable William W. Caldwell

_____

Submitted Under Third Circuit LAR 34.1(a)
October 25, 2006

Before: MCKEE, FUENTES AND NYGAARD, <u>CIRCUIT JUDGES</u>.

(Filed: October 27, 2006)
_____

OPINION
_____

PER CURIAM

Jamalud-din Almahdi is serving a sentence of imprisonment at FCI-Allenwood for

a parole violation. His presumptive parole date is March 29, 1997. Almahdi sued the Department of Homeland Security ("DHS"), the Federal Bureau of Prisons ("BOP"), and officials associated with both institutions and the Federal Bureau of Investigation. He claimed that his constitutional rights were violated when DHS arbitrarily placed his name on a watch list, and when officials at FCI-Allenwood placed him in administrative detention at times of elevated national security because his name was on the list. Specifically, he alleged that he was placed in segregation for over two months in late 2001, for nearly a month in early 2003, and for another six weeks in mid-2003. Second Amended Complaint, 5-6. He asked the District Court for an award of money damages against all Defendants, and he specifically asked that DHS be ordered to remove his name from the watch list. See id. at 12-13. In his complaint, Almahdi also stated that, apparently as a result of the prison's security concerns about him, his telephone privileges were reduced to once a month. Id. at 8.

Defendants immediately moved for summary judgment, arguing primarily that Almahdi had not administratively exhausted his claim about the watch list with prison officials. See Summary Judgment Brief, 2 n.2 (noting that they would file another motion to address the merits if the exhaustion defense were unsuccessful), 7-12. As to Almahdi's claim about his reduced telephone privileges, Defendants argued that prisoners have no constitutional right to use a telephone.

The District Court dismissed Almahdi's claim about the watch list for failure to

exhaust his administrative remedies. It held that Almahdi had waived most of the claim concerning phone privileges, and it denied the remainder of that claim on the merits. Almahdi appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment. See Podobnick v. U.S. Postal Service, 409 F.3d 584, 589 (3d Cir. 2005). We will affirm in part and vacate in part.

We previously dismissed Almahdi's appeal insofar as it relates to his claim that prison officials improperly placed him in special housing at times of high national security. See Almahdi v. Sec'y of Dep't of Homeland Sec., No. 04-3120 (order entered January 18, 2006). As we explained then, we agree with the District Court that Almahdi did not exhaust that claim. See 42 U.S.C. § 1997e(a).

We do not agree, however, with the District Court's implicit determination that Almahdi was obligated to exhaust his claim insofar as he alleged that his constitutional rights were violated when DHS improperly placed his name on a watch list. Section 1997e(a) requires exhaustion of claims concerning "prison conditions," and courts have taken a broad view of that term. See, e.g., Porter v. Nussle, 534 U.S. 516, 532 (2002) (holding that the exhaustion requirement of § 1997e(a) "applies to all inmate suits about prison life"). To interpret the phrase, we have considered its definition in 18 U.S.C. § 3626(g)(2), another section of the Prison Litigation Reform Act ("PLRA"). See Booth v. Churner, 206 F.3d 289, 294 (3d Cir. 2000), aff'd 532 U.S. 731 (2001).

3

In pertinent part, § 3626 defines the term "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). We have concluded that complaints about "conditions of confinement" include "complaints such as those regarding cell overcrowding, poor prison construction, inadequate medical facilities, and incomplete law libraries." Booth, 206 F.3d at 295. More generally, we have explained that "actions arising under this clause relate to the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." Id. We have read the phrase referring to civil actions about "the effects of actions by government officials on the lives of persons confined in prison" to mean complaints "ranging from excessive force actions . . . to actions 'with respect to' a prison official's decision not to make basic repairs in the prison, or intentionally to deny a prisoner food, heating, or medical attention." Id.

Almahdi's claim that DHS improperly placed his name on a national watch list is certainly not a claim about a condition of his confinement. And his claim is not a civil action about the effect of actions by governments officials on the lives of persons confined in prison, either. As we concluded previously and iterated above, to the extent that Almahdi complains about the effects of the addition of his name to the watch list by DHS on his experience in prison (including his relegation to segregation or the

deprivation of his telephone privileges), Almahdi must exhaust his claims through the proper administrative channels. However, his separate and more fundamental claim that DHS improperly placed his name on a national watch list, a designation that affects him temporally and figuratively beyond his term of imprisonment, need not be exhausted administratively. Cf. Treesh v. Taft, 122 F. Supp. 2d 887, 891 (S.D. Ohio 2000) (holding that prisoners were not obligated to exhaust their claims because they challenged actions whose effect came after their term of imprisonment had ended). Furthermore, although like the examples cited in Booth, the inclusion of Almahdi's name on the watch list "makes [his] life worse," unlike the examples in Booth, the action is not one taken by prison officials. 206 F.3d at 295. The placement of Almahdi's name on watch list occurred outside the prison gates. Accordingly, Almahdi is not obligated to exhaust his claim through the prison grievance process.[1]

---

[1] We note that requiring Almahdi to seek relief in the prison grievance system would not advance the general policies of the doctrine of administrative exhaustion or the more specific policy underlying the PLRA exhaustion requirement. To wit, it would not allow the prison to "'correct its own mistakes with respect to the programs it administers,'" or "promote efficiency" through settlement at the administrative level. Woodford v. Ngo, 126 S. Ct. 2378, 2384-85 (2006). It also would not further the goal of reducing "unwarranted federal-court interference with the administration of prisons" by affording "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. The policies are not forwarded because Almahdi claims that another agency, not the prison, made a mistake when it placed his name on a watch list. Therefore, any mistake could not have been corrected by the prison alone and any judicial correction would not interfere with the administration of the prison. While we acknowledge Appellees' argument that the BOP may be able to help an inmate pursue a claim like Almahdi's because of interagency data-sharing, see Appellees' brief at 28, n.13, there is no evidence that this is a task that the BOP ordinarily undertakes. Also,

5

In entering judgment in favor of Defendants for Almahdi's failure to exhaust, the District Court conflated Almahdi's claim based on DHS's alleged error in adding his name to a watch list with his claim based on prison officials' actions taken in response to his name on the watch list. While we separate the claims, we will affirm the District Court's judgment in favor of Defendants because Almahdi failed to state a claim upon which relief can be granted. See Erie Telecomms. v. Erie, 853 F.2d 1084, 1089 (3d Cir. 1988) (holding that an appellate court may affirm on an alternative basis supported by the record).

Under the circumstances of this case, the listing of Almahdi's name on a watch list violated no constitutional right. Without more, the imposition of a stigma or an injury to one's reputation is not sufficient to state a claim for a due process violation. See Paul v. Davis, 424 U.S. 693, 709, 712 (1976); Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984). A plaintiff must allege a stigma plus a deprivation of a liberty or property interest protected by the Due Process Clause. See Paul, 424 U.S. at 712. Almahdi alleged his constitutional rights were violated when his name was arbitrarily placed on a watch list by DHS, causing officials at FCI-Allenwood to place him in administrative detention and downgrade his telephone privileges whenever the nation's security level was heightened. Even assuming that Almahdi suffers a stigma because his name is on the

we agree with Almahdi that an agency outside the prison is the ultimate decision-maker, see Appellant's brief at 4.

6

watch list, he does not state a claim because he does not suffer a concomitant deprivation of a liberty or property right.

Almahdi's three transfers to segregated confinement and the limitations imposed on his use of the telephone did not violate his due process rights. Almahdi has no protected liberty interest in retaining his custody status. See Meachum v. Fano, 427 U.S. 215, 224 (1996). State-created interests are generally limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Transfers, resulting in approximately six months of segregated confinement, or limitations on telephone privileges, are not examples of such atypical or significant hardship. See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in *Sandin*"); Fraise v. Terhune, 283 F.3d 506, 522-23 (3d Cir. 2002); Griffin v. Vaughn, 112 F.3d 703. 706 (3d Cir. 1997). Furthermore, although Almahdi appears to contend that prison officials may not have abided by all pertinent regulations in changing his custody status and limiting his telephone usage, he has no independent liberty interest in the prison procedures themselves. See Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983).

In addition to the claims described above, Almahdi presented an independent and fully exhausted claim based on the reduction of his telephone privileges. The District Court read Almahdi's opposition to the Government's motion for summary judgment as

7

narrowing his claim about his reduced telephone privileges to a claim concerning only whether Almahdi was entitled to written (not oral) notice of the reduced privileges. See District Court Memorandum, 10. We do not read Almahdi's response to the motion for summary judgment as so dramatically narrowing his claim, however. To be sure, Almahdi did mention the notice he received of the reduced privileges, see Summary Judgment Opposition, 10, but he did so only in the context of arguing that the reduction in phone privileges was entirely irregular and unconstitutional. See id. at 4-11. On appeal, Almahdi continues to assert that his constitutional rights have been violated by the restriction on his phone usage. See Appellant's brief, 8-11. Because the District Court misconstrued Almahdi's claim, and because the current record presents no alternative basis to affirm, we will vacate the judgment in favor of Defendants on this claim. On remand, the District Court may wish to evaluate Almahdi's claim under the First Amendment.[2]

---

[2]The First Amendment doctrine relevant to Almahdi's claim has been summarized elsewhere as follows:

> The Supreme Court has recognized that 'prison walls do not form a barrier separating prison inmates from the protections of the Constitution,' *Turner v. Safley*, 482 U.S. [78] at 84 [(1987)] . . ., nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside,' *id.*, at 94-99 . . ." *Thornburgh v. Abbott*, 490 U.S. 401, 407, 104 L. Ed. 2d 459, 109 S. Ct. 1874 (1989). In fact, federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975), and have recognized that "there is no legitimate governmental purpose to be attained by not allowing

8

In sum, the District Court's judgment will be affirmed in part and vacated in part. We remand this matter to the District Court for further proceedings consistent with this opinion.

---

> reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984).
>
> Nevertheless, an inmate "has no right to unlimited telephone use." *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir.), *cert. denied*, 493 U.S. 895, 107 L. Ed. 2d 194, 110 S. Ct. 244 (1989), *citing Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). Instead, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986). "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563-64 (D. Kan. 1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994), and *citing Feeley v. Sampson*, 570 F.2d 364, 374 (1st Cir. 1978), and *Jeffries v. Reed*, 631 F. Supp. 1212, 1219 (E.D. Wash. 1986).

*Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). Under these standards, Almahdi states a claim under the First Amendment. See also Haines v. Kerner, 404 U.S. 519, 520 (1972). However, it remains to be seen whether Almahdi will be entitled to judgment on his claim after further discovery. We note that in addition to claiming that prisoners have no constitutional right to telephone use, Defendants presented evidence in the District Court that Defendant Malocu, an FBI agent, administered a polygraph examination in which he asked Almahdi whether he had any involvement in, or prior knowledge of, the 9/11/01 terrorist attacks. See Summary Judgment Brief, Attachment #4, R.37. Malocu averred that Almahdi's responses indicated deception. See id. Almahdi disputed Malocu's account, claiming that he was completely cleared of having any involvement or knowledge and that any deception related to a question about a hypothetical event. See Summary Judgment Opposition, 4 & Declaration, 2, ¶¶ 7-8.