RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TODD MATTOX,

　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

ADAM EDELMAN, M.D.; CORIZON HEALTH, INC.,

　　　　　　　　*Defendants*,

ADRIANNE NEFF, P.A.; HARESH PANDYA, M.D.;
KENNETH JORDAN, M.D.; WILLIAM BORGERDING,
D.O.,

　　　　　　　　*Defendants-Appellees*.

No. 16-1412

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-13762—Laurie J. Michelson, District Judge.

Argued: January 25, 2017

Decided and Filed: March 15, 2017

Before: MERRITT, CLAY, and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:** Susan M. Razzano, EIMER STAHL LLP, Chicago, Illinois, for Appellant. Carly Van Thomme, CHAPMAN LAW GROUP, Troy, Michigan, for Appellee Neff. Allan J. Soros, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees Pandya and Borgerding. **ON BRIEF:** Susan M. Razzano, EIMER STAHL LLP, Chicago, Illinois, David M. Shapiro, SOLANGE MACARTHUR JUSTICE CENTER, Chicago, Illinois, for Appellant. Carly Van Thomme, Ronald W. Chapman, Kevin A. McQuillan, CHAPMAN LAW GROUP, Troy, Michigan, for Appellee Neff. Kevin Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees Pandya and Borgerding.

---

**OPINION**

---

CLAY, Circuit Judge.   Plaintiff Todd Mattox, a Michigan prisoner, appeals from the orders entered by the district court granting various dispositive motions filed against Mattox's Eighth Amendment deliberate indifference claims against three doctors and a physician's assistant who allegedly provided him deficient care for his heart condition.   On appeal, Mattox argues that the district court erred in: (i) granting summary judgment on his claims against Defendants Haresh Pandya and William Borgerding for failure to exhaust administrative remedies; (ii) *sua sponte* dismissing his claims against Defendant Kenneth Jordan for failure to exhaust administrative remedies; and (iii) granting Defendant Adrianne Neff's motion to dismiss for failure to state a claim.   We have subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.   For the reasons set forth below, we **AFFIRM IN PART** and **REVERSE IN PART** the district court's judgment, and **REMAND** for further proceedings.

**BACKGROUND**

I.      **Factual History**

Mattox is currently an inmate at the Lakeland Correctional Facility in Coldwater, Michigan.   During most of the events relevant to this lawsuit, Mattox was an inmate at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

On July 25, 2011, Mattox complained to prison medical officials that he was experiencing pain and tightness in his chest, neck, shoulders, and arms, as well as shortness of breath, fatigue, and dizziness.   The nurse on duty performed an electrocardiogram ("EKG") test, which indicated a sinus rhythm with left axis deviation.   After this test, Mattox was taken to the emergency room, where he was seen by an outside cardiologist.   On July 26, 2011, the outside cardiologist performed an echo stress test on Mattox's heart, which suggested a possible ischemia in the heart's basal inferior wall.[1]   The cardiologist recommended that Mattox undergo

---

[1]In layman's terms, the test suggested that part of Mattox's heart was not receiving sufficient blood or oxygen.

a cardiac catheterization procedure to rule out coronary artery disease, and determine whether he needed a stent or surgery in order to prevent a future heart attack.

Mattox's request for a cardiac catheterization procedure was referred to Defendant Adam Edelman, an employee of Defendant Corizon Health, Inc., for approval.**2** Corizon is a health care contractor for the Michigan Department of Corrections, and employed all of the doctors and physician's assistants Mattox has sued in this lawsuit. Dr. Edelman reviewed Mattox's EKG results, and was not convinced that a cardiac catheterization was necessary; accordingly, he denied approval for the procedure.

Mattox was thereafter briefly hospitalized at the Duane L. Waters Hospital, a prison hospital associated with the Michigan Department of Corrections, and was released back to the Cotton Facility on August 2, 2011, with instructions to seek immediate evaluation if his chest pains recurred. On August 3, 2011, Mattox filed an administrative grievance with the prison numbered JCF-2011-08-1632-1202 ("JCF-1632" or "first grievance"), naming Dr. Edelman, and requesting the cardiac catheterization test that the outside cardiologists had recommended. After the grievance was denied, Mattox fully exhausted his appeals pursuant to Michigan Department of Corrections policy, but did not obtain any relief.

At about 11:00 p.m. on August 14, 2011, Mattox experienced the same symptoms he had complained of on July 25, 2011. He immediately reported to the prison's infirmary, notified the nurse on duty of his symptoms, and told her that the nitroglycerine tablets he had been given during his last hospitalization were not working. The nurse performed an EKG on Mattox, and then called an off-site physician's assistant, Defendant Adrianne Neff, and left P.A. Neff a voicemail message describing the EKG results, Mattox's recent hospital stay, and the records of the stress test Mattox received on July 26, 2011. P.A. Neff returned the nurse's call, and ordered that Mattox be sent back to his housing unit rather than to the emergency room.

The next morning, Mattox's chest pains continued, and he reported to the prison's attending physician, Dr. Karen Rhodes. Dr. Rhodes did not prescribe Mattox any new

---

**2**Mattox has abandoned his claims against Dr. Edelman and Corizon on appeal, and so we do not discuss them.

medication, but instead sent him to the emergency room, where outside doctors once again recommended that Mattox undergo a cardiac catheterization test. After Mattox returned to the prison, Dr. Rhodes prescribed a medication called Imdur, but later took Mattox off of that medication because it caused Mattox intolerable dizziness. Dr. Rhodes once again asked Dr. Edelman for authorization to perform a cardiac catheterization test, but Dr. Edelman denied the request.

On August 18, 2011, Mattox filed another grievance numbered JCF-2011-08-1747-12DI ("JCF-1747" or "second grievance"), complaining that P.A. Neff did not send him to the hospital as requested on the evening of August 14, 2011. Mattox was denied relief at all steps of this grievance, and his appeals were finally exhausted on December 8, 2011.

On September 18, 2011, Mattox filed a third grievance numbered JCF-2011-09-1974-12D1 ("JCF-1974" or "third grievance"), complaining that his medication was ineffective at controlling his cardiac symptoms. This grievance was also denied at every administrative step, and was finally exhausted on December 28, 2011.

In October 2011, Mattox's chest pains once again returned, and once again he was sent to the emergency room. While there, an outside cardiologist recommended that Mattox be started on a heart drug called Ranexa. However, Ranexa was not on the prison's formulary, and so Dr. Rhodes was required to seek the approval of Defendant Haresh Pandya before Ranexa could be given to Mattox. On October 12, 2011, Dr. Pandya denied permission to give Mattox Ranexa, and instead ordered Mattox to remain on medication that had previously made him dizzy.

Mattox's chest pains continued intermittently over the next two and a half years, requiring multiple hospitalizations. Of note during this period, on April 23, 2012, Mattox finally received the cardiac catheterization test he had been seeking, which ruled out heart disease, and suggested that his symptoms be treated with medication. After a hospitalization for chest pain in March 2013, Mattox's outside doctors once again recommended that he be prescribed Ranexa, rather than the Imdur and other medications prison officials had been giving him, because those medications had proven ineffective at controlling his pain. Mattox requested Ranexa from

Defendant Kenneth Jordan in early 2013, but was denied; Dr. Jordan gave Mattox another prescription for Imdur instead.

On April 4, 2013, Mattox filed a fourth grievance numbered LCF 2013-04-0355-12D1 ("LCF-0355" or "fourth grievance"), alleging that the medications prison officials were giving him were ineffective at controlling his pain, and requesting the Ranexa several outside doctors had prescribed him. This grievance, like the others, was denied at every step and was finally exhausted on June 24, 2014.

After yet another hospitalization in mid-June 2013, Mattox was finally given a six-month prescription for Ranexa by Dr. Pandya. Mattox did not experience any cardiac symptoms during those six months. In January 2014, after the Ranexa prescription ran out, Mattox's chest pains returned. Mattox sought a renewal of his Ranexa prescription, but was informed by a physician's assistant that Defendant William Borgerding had denied approval because Corizon felt that Ranexa was too expensive. Dr. Borgerding persisted in his refusal to provide Mattox with Ranexa even after Mattox was hospitalized again while on Imdur.

On February 4, 2014, Mattox filed a fifth grievance numbered LCF 2014-02-0159-12F3 ("LCF-0159" or "fifth grievance"), again complaining about his Ranexa denials. This grievance was denied at every step and fully exhausted on June 24, 2014.

## II.    Procedural History

On August 24, 2012, after exhausting his first three grievances, Mattox filed a *pro se* complaint in the Eastern District of Michigan against Dr. Edelman and P.A. Neff alleging deliberate indifference to his serious medical needs in violation of 42 U.S.C. § 1983 and the Eighth Amendment. As to P.A. Neff, Mattox alleged that she was deliberately indifferent by not sending to him to the emergency room on August 14, 2011, when he presented to the prison infirmary with chest pains. On July 30, 2013, the district court adopted a magistrate judge's Report and Recommendation and granted P.A. Neff's motion to dismiss, concluding that Mattox had not pled that he suffered from an objectively serious medical need on August 14, 2011. *Mattox v. Edelman*, No. 12–13762, 2013 WL 3936424, at *3–4 (E.D. Mich. July 30, 2013).

Subsequently, Mattox sought leave to amend his complaint to add claims against additional defendants. The district court granted this motion as to Dr. Pandya, and the magistrate judge later granted Mattox leave to add Dr. Jordan, Dr. Borgerding, and Corizon as defendants.

Mattox's amended complaint asserted deliberate indifference claims against Dr. Pandya, Dr. Jordan, and Dr. Borgerding, and a *Monell* claim against Corizon, related to these defendants' various denials of his request for Ranexa, and Corizon's allegedly unconstitutional practice of denying necessary medical care for purely budgetary reasons. Dr. Pandya and Dr. Borgerding moved for summary judgment, arguing *inter alia* that Mattox had failed to exhaust his administrative remedies against them.

On January 12, 2016, the magistrate judge granted the dispositive motions filed by Defendants, and also recommended dismissing Mattox's claims against Dr. Jordan *sua sponte*.[3] *Mattox v. Edelman*, No. 12-13762, 2016 WL 398242, at *1 (E.D. Mich. Jan. 12, 2016) ("*Mattox II*"). The magistrate judge reasoned that none of Mattox's first three grievances properly exhausted claims as to Dr. Pandya, Dr. Borgerding, or Dr. Jordan because those grievances, which generally sought cardiac catheterization, had not given Defendants a fair chance to address Mattox's Ranexa claims on the merits. *Id.* The magistrate judge then determined that Sixth Circuit precedent rendered Mattox's fourth and fifth grievances ineffective, because they were not exhausted prior to the filing of Mattox's original complaint. *Id.* at *2.

Mattox appealed the magistrate judge's conclusion to the district court. On March 14, 2016, the district court adopted the magistrate judge's Report and Recommendation, largely echoing the magistrate judge's legal reasoning. *Mattox v. Pandya*, No. 2:12-cv-13762, 2016 WL 945340, at *1 (E.D. Mich. Mar. 14, 2016) ("*Mattox III*"). That same day, the district court entered judgment dismissing all of Mattox's claims. Mattox filed a timely notice of appeal.

---

[3]Mattox is proceeding *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B)(ii) requires a district court to dismiss an IFP complaint if at any point it determines that the complaint "fails to state a claim on which relief may be granted." The magistrate judge invoked this authority in *sua sponte* dismissing Mattox's claims against Dr. Jordan, despite the fact that Dr. Jordan has not been served and has not answered. *See Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) ("[A] court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust.").

**DISCUSSION**

Mattox argues that he properly exhausted his claims as to Dr. Pandya, Dr. Jordan, and Dr. Borgerding, and also challenges the district court's dismissal of his deliberate indifference claim against P.A. Neff. We address each of these issues in turn.

**I.        Claims Against Dr. Pandya, Dr. Jordan, and Dr. Borgerding**

**A.        Standard of Review**

We review *de novo* the district court's "[d]ismissal of a prisoner's civil rights claim for failure to exhaust administrative remedies." *See, e.g.*, *Risher v. Lappin*, 639 F.3d 236, 239 (6th Cir. 2011); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 993 (6th Cir. 2004). Mattox's claims against Dr. Pandya and Dr. Borgerding were dismissed at the summary judgment stage. "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher*, 639 F.3d at 240 (quoting Fed. R. Civ. P. 56(a)). "When ruling on a motion for summary judgment, a court must consider the evidence 'in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)). Mattox's claim against Dr. Jordan was dismissed on the face of the complaint. We review *de novo* the district court's dismissal at the pleading stage for failure to exhaust administrative remedies. *See, e.g. Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622, 624 (6th Cir. 2015); *Hall v. Knott Cty. Bd. of Educ.*, 941 F.2d 402, 406 (6th Cir. 1991). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

**B.        Applicable Legal Principles**

The Prison Litigation Reform Act requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in a federal court.[4] *See* 42 U.S.C.

_____

[4]Specifically, the PLRA's exhaustion provision provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,

§ 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants. *Jones*, 549 U.S. at 212. When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012).

There is no uniform federal exhaustion standard. A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution. *Jones*, 549 U.S. at 217–19. "This court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier v. Laurel Cty.*, 636 F.3d 218, 224 (6th Cir. 2011)).

The relevant grievance procedures for Michigan inmates are set forth in Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007), *available at* http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf ("MDOCPD 130"). MDOCPD 130 creates a three-step grievance procedure Michigan prisoners must follow in order to exhaust their administrative remedies. Relevant here, MDOCPD 130 requires prisoners to provide the following information at Step I of the grievance procedure:

> The issues [underlying the grievance] should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.

MDOCPD 130 ¶ R (underlining in original, italics added).

We have explained that a prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the

---

or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

## C.      Interaction Between the PLRA and Rule 15

Mattox argues that his fourth and fifth grievances properly exhausted his Ranexa-based claims against the three doctor defendants. The magistrate judge and district court disagreed, concluding that grievances exhausted after the commencement of a lawsuit can never satisfy the PLRA's exhaustion requirement.[5] Mattox challenges this conclusion by arguing that: (i) nothing in the PLRA purports to disrupt the normal operation of Federal Rule of Civil Procedure 15(d), which allows plaintiffs to file a supplemental complaint alleging claims based on events that occurred after the lawsuit was filed; and (ii) permitting plaintiffs to amend their complaints to allege newly exhausted claims is consistent with the purpose of the PLRA's exhaustion requirement. After a careful review of the relevant law, we agree with Mattox.

---

[5]The district court also concluded that Mattox waived his right to argue that he was permitted to add newly exhausted claims through Rule 15(d) because he did not challenge "the Magistrate Judge's view of the law" in his objections to the magistrate judge's Report and Recommendation. *Mattox III*, 2016 WL 945340, at *6. We disagree. In his objections, Mattox argued that when he "first moved to amend his original complaint, it was only to include discovered defendants whose actions covered plaintiff's original claim of deliberate indifferences resulting from defendants [sic] refusal to provide adequate medical treatment. Thus, contrary to the magistrate Judge's conclusion, there was never an issue of failure to exhaust administrative remedies at issue in this case, because exhaustion was completed on each named defendant." (R. 150, Mattox Objections, at 5–6.) This was sufficient to preserve this issue, particularly in light of the liberal standards that apply to filings by *pro se* litigants. *See, e.g.*, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). Moreover, we are confident that the district court understood the import of Mattox's argument because the magistrate judge acknowledged that several cases had determined that claims exhausted post-filing can be validly added via Rule 15(d), and we presume that the district court read the Report and Recommendation it adopted. *Mattox II*, 2016 WL 398242, at *3 (collecting cases).

Federal Rule of Civil Procedure 15(d) provides that:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). Rule 15 sets a liberal policy in favor of permitting parties to amend their pleadings, and courts have interpreted the rule to allow parties to add new claims, defenses, and parties to the lawsuit. *See* Charles A. Wright & Arthur R. Miller, et al., *Federal Practice and Procedure* § 1504 (3d ed. 2016) (collecting cases).

Our sister circuits have unanimously concluded that Rule 15 permits a prisoner to amend his complaint to add new claims that have only been exhausted after the commencement of the lawsuit. *See Cano v. Taylor*, 739 F.3d 1214, 1221 (9th Cir. 2014) (vacating district court's dismissal of prisoner's claims "because it was based on the determination that Cano had not exhausted his administrative remedies prior to the filing of his initial complaint, rather than his amended complaint."); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("Defendants' argument that the PLRA requires the newly-added claims in the SAC to have been exhausted before the original complaint was 'brought' on January 4, 2002, fails because it ignores the general rule of pleading that the SAC completely supercedes any earlier complaint, rendering the original complaint non-existent and, thus, its filing date irrelevant."); *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam); *Boone v. Nose*, 530 F. App'x 112, 113 n.1 (3d Cir. 2013) ("Under the Prison Litigation Reform Act, prisoners may file supplemental complaints if the claims in question 1) have truly accrued since the beginning of the suit and 2) are exhausted per 42 U.S.C. § 1997e(a) before the supplement is filed.").

We find the reasoning of these cases compelling. As we have noted, the PLRA's exhaustion requirement is designed to give prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced. *Reed-Bey*, 603 F.3d at 324. If a prisoner exhausts some of his claims after a proper federal lawsuit has been filed as to other claims, and then moves to amend his complaint to add the newly exhausted claims, the

policy behind the PLRA's exhaustion requirement is still met because prison officials will have had a fair opportunity to address the new claims on the merits. As the Seventh Circuit has persuasively explained:

> The district court dismissed the [plaintiff's] claims . . . because [the plaintiff] failed to exhaust his administrative remedies on those claims before filing his original complaint. The court correctly noted that a prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending. *See* [*Perez v. Wisc. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)]. As we have previously observed, this exhaustion requirement is designed to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation. *See* [*Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)]; *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir. 2002). Permitting a prisoner to sue first and then ask the prison to address issues that are now the subject of pending litigation defeats the purpose of the PLRA's exhaustion requirement.
>
> But [the plaintiff's] 1998 grievance concerning the alleged attack at [the prison] gave prison officials precisely the type of opportunity to address his complaints that the PLRA contemplates. The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins. *See Ford*, 362 F.3d at 399. [The plaintiff's] November 1998 grievance apprised prison officials of the alleged attack at [the prison], and he did not hale those defendants into court until he had pursued all of the administrative remedies available to him. *That he raised these claims by amending his complaint in an already pending case rather than initiating an entirely new proceeding is irrelevant to the objectives of § 1997e(a).*

*Cannon*, 418 F.3d at 719 (emphasis added). Moreover, we note the Supreme Court has admonished that "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns" when interpreting the PLRA, further lending support to the idea that the ordinary operation of Rule 15(d) should be allowed in his case. *See Jones*, 549 U.S. at 212.

In reaching the contrary conclusion, the court below determined that it was bound by our decision in *Cox v. Mayer*, 332 F.3d 422, 428 (6th Cir. 2003). There, we held that the PLRA's exhaustion requirement applies to persons who are incarcerated when the federal lawsuit is filed, but have been released from custody when the exhaustion issue is litigated. *Id.* at 424. The plaintiff in *Cox* had not exhausted his administrative remedies as to any claim before filing suit.

*Id.* The plaintiff argued that this defect could nevertheless be "cured" through application of Rule 15(d). *Id.* at 428. We held that the plaintiff waived any application of Rule 15(d) by failing to file a motion to supplement his pleadings before the district court. *Id.* However, in dicta, we briefly stated that:

> But, even assuming that plaintiff *had* made such a motion, the outcome would be no different. This is because a procedural rule "cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc) (declining-under similar circumstances-to apply Rule 15(d) to excuse plaintiff's failure to comply with an analogous provision of the PLRA, § 1997e(e)).

*Id.*

The *Cox* panel's dicta do not bind us. *See, e.g.*, *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 750 (6th Cir. 2010) ("[O]ne panel of [the Sixth Circuit] is not bound by dicta in a previously published panel opinion." (quoting *United States v. Burroughs*, 5 F.3d 192, 194 (6th Cir. 1993))). But in any event, as Mattox correctly argues, *Cox* is distinguishable. The plaintiff in *Cox* had not exhausted *any* of his claims before filing suit in federal court. *Cox*, 332 F.3d at 424. The *Cox* panel was thus likely correct that Rule 15(d) could not save an action that did not comply with the PLRA's exhaustion requirement in any way. *See Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 278 (6th Cir. 1997), (holding that subsequently enacted federal statutes trump the Rules of Civil Procedure), *abrogated on other grounds by Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Here, by contrast, Mattox filed his original complaint after properly exhausting his claims as to Dr. Edelman and P.A. Neff. Therefore, because Mattox had exhausted his remedies before his "action" was "brought," *Cox* is inapposite. 42 U.S.C. § 1997e(a).

The parties also dispute the applicability of our decisions in *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005), and *Utley v. Campbell*, 84 F. App'x 627, 629 (6th Cir. 2003). In *Harbin-Bey*, we held that the district court did not abuse its discretion in declining to permit the plaintiff prisoner to supplement his complaint and add a new claim against the defendant. 420 F.3d at 580. The *Harbin-Bey* panel's sparse reasoning was as follows:

> Although Harbin–Bey filed a new administrative grievance against Rutter, he did so only after commencing this lawsuit. This court has held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (dismissing an Ohio prisoner's suit because he filed his federal complaint before completing the administrative process). We therefore conclude that the district court did not abuse its discretion in refusing to allow Harbin–Bey to supplement his complaint.

*Id.* As Mattox correctly argues, although *Harbin-Bey* is related to this case, it does not control the outcome here. The issue of whether a prisoner can amend a complaint to assert claims that were only exhausted after the commencement of the lawsuit was not squarely before the *Harbin-Bey* panel. Rather, the district court denied leave to supplement the complaint "because Harbin-Bey failed to exhaust his administrative remedies through the prison's grievance procedures with regard to [the defendant's] most recent alleged misconduct." *Id.* Accordingly, *Harbin-Bey* is distinguishable because the district court there did not allow the prisoner to file a supplemental complaint, and because the prisoner had not fully exhausted the new claims he was trying to add before filing his Rule 15 motion. Here, by contrast, the magistrate judge did allow Mattox to file an amended complaint, and Mattox's fourth and fifth grievances were fully exhausted before the amended complaint was filed.

*Freeman v. Francis*, the case cited by the *Harbin-Bey* panel, does not command a contrary result. In *Freeman*, as in *Cox*, the plaintiff had not properly exhausted *any* claims before filing the original complaint. 196 F.3d at 642. *Freeman* thus does not speak to the issue of whether an inmate can add newly exhausted claims to a lawsuit originally based on separate, fully exhausted claims.

In *Utley*, a panel of this Court held that the district court did not abuse its discretion in denying the plaintiff's "second and third motions to amend and supplement the complaint." 84 F. App'x at 629. In passing, the *Utley* panel stated that the "district court properly noted that Utley had not exhausted his administrative grievances of the claims he sought to add until after this case was filed, and therefore they could not be appended to this litigation." *Id.* Although this language in *Utley* is on point, *Utley* was an unsigned, unpublished order with no reasoning beyond a citation to *Freeman*, which did not address the issue before us in this case. We do not

find *Utley* persuasive in light of the better-reasoned authority we have cited from the Seventh and Ninth Circuits. Accordingly, we disapprove *Utley* to the extent it conflicts with this opinion.

Finally, Dr. Pandya and Dr. Borgerding argue that the Seventh and Ninth Circuit cases holding that Rule 15 can be used to add new claims that were exhausted after the lawsuit was filed were wrongly decided because they conflict with the plain language of § 1997e(a). Specifically, these defendants argue that when § 1997(e)(a) says that "[n]o action shall be brought" alleging improper prison conditions until after the plaintiff has exhausted prison remedies, it means that no lawsuit may be brought until administrative remedies for every claim asserted in the suit have been exhausted, and therefore, new claims that were exhausted post-filing cannot be added to the suit. Defendants concede that § 1997e(a) would allow a plaintiff to amend a valid lawsuit to assert newly exhausted claims if the word "action" in "no action shall be brought" meant "claim."

However, as Mattox correctly points out, the Supreme Court has already rejected the argument that the word "action" in § 1997e(a) means something different than "claim." *Jones*, 549 U.S. at 220. In *Jones*, the Court considered whether § 1997e(a) requires courts to dismiss an entire lawsuit if any of the claims in the suit are unexhausted. *Id.* Similar to Defendants here, the respondents in *Jones* argued "that if Congress intended courts to dismiss only unexhausted claims while retaining the balance of the lawsuit, the word 'claim' rather than 'action' would have been used in [§ 1997e(a)]." *Id.* In rejecting this argument, the Court explained that the "statutory phrasing—'no action shall be brought'—is boilerplate language," and "generally, statutory references to an 'action' have not typically been read to mean that every claim included in the action must meet the pertinent requirement before the 'action' may proceed." *Id.* at 220–21. Accordingly, because the word "action" in § 1997e(a) is synonymous with the word "claim," Defendants have effectively conceded that Mattox did not run afoul of the PLRA's exhaustion requirement by amending his complaint to add newly exhausted claims to this lawsuit.

In sum, we hold that the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted

claim.**6**   Because Mattox's original complaint contained fully exhausted claims, we will now assess whether Mattox's various grievances properly exhausted his claims as to Dr. Pandya, Dr. Jordan, and Dr. Borgerding.

### D.     Exhaustion

### 1.     Dr. Pandya

Mattox argues that he exhausted his claims against Dr. Pandya in two ways: (i) by complaining that he was receiving inadequate medication in his first three grievances; and (ii) by protesting his denial of Ranexa in his fourth and fifth grievances.  We hold that Mattox's first three grievances were insufficient to exhaust claims against Dr. Pandya, but that a jury could find that Mattox's fifth grievance properly exhausted his claims.

None of Mattox's first three grievances can be fairly read to request relief from any action or lack of action attributable to Dr. Pandya.  Mattox's claims against Dr. Pandya fault him for failing to give Mattox the heart drug Ranexa, despite allegedly knowing that Ranexa was more effective than the other drugs Mattox was given.  However, as the magistrate judge aptly noted, "Ranexa was not even recommended by any physician until October 7, 2011, *after* the above grievances were filed." *Mattox II*, 2016 WL 398242, at *1.  None of Mattox's original three grievances mentioned Ranexa, or requested anything other than a heart catheterization to determine whether sufficient blood flow was going to Mattox's heart.  We hold that no reasonable jury could find that Mattox's first three grievances exhausted claims that Dr. Pandya failed to give him a heart drug that was not even at issue until after the grievances were filed, and that Mattox did not yet request.

Mattox argues that his JCF-1747 and JCF-1974 grievances each alleged that the nitroglycerine tablets he was being prescribed were ineffective at treating his symptoms, and therefore prison officials were on notice that Mattox was seeking different medication than the drugs that Dr. Pandya was approving.  He alleges that this notice is sufficient for him to have

---

**6**We have addressed the interaction between the PLRA's exhaustion requirement and Rule 15(d) because the magistrate judge construed Mattox's motion for leave to amend as a motion pursuant to Rule 15(d).  We note, however, that the result would have been the same if Mattox had moved to amend his complaint pursuant to Rule 15(a). *See Cannon*, 418 F.3d at 720.

exhausted administrative remedies against Dr. Pandya on his claims that Dr. Pandya violated the Eighth Amendment by failing to prescribe him Ranexa. As the district court correctly determined, however, Mattox's original three grievances consistently and solely requested a cardiac catheterization—and not any particular medication. The grievances did not give prison officials a fair opportunity to address Mattox's claim on the merits by providing Ranexa, or any other prescription drug, because the grievances can only be fairly read to request a cardiac catheterization.

Mattox additionally argues that his original three grievances generally gave all relevant medical officials notice of his claim that he was receiving inadequate heart treatment, and that this general notice was sufficient to exhaust all possible claims related to his heart treatment. We cannot credit Mattox's argument, however, because it would effectively collapse the PLRA's exhaustion requirement. If generalized dissatisfaction with an inmate's medical care were sufficient to exhaust all possible claims related to that care, then prisoners could bring claims in federal court without ever giving prison staff a fair chance to remedy a prisoner's complaints. When an inmate is receiving *little or no medical care at all*, it might arguably be appropriate to generally allege inadequate medical care. However, where, as here, an inmate is receiving care, we hold that the inmate can only exhaust claims where he notifies the relevant prison medical staff as to which facets of his care are deficient. This rule better comports with MDOCPD 130, which requires inmates to describe the "who, what, when, where, why, [and] how" of their claim. Because Mattox repeatedly made clear that the "what" he was requesting was cardiac catheterization, we cannot agree that his first three grievances exhausted claims as to Dr. Pandya's failure to provide Ranexa.

However, we agree that a jury could find that Mattox's fifth grievance properly exhausted his claims as to Dr. Pandya. That grievance noted that: (i) Mattox suffers from angina pain; (ii) Mattox had been repeatedly prescribed Ranexa to control his pain; (iii) Mattox's pain was completely eliminated when taking Ranexa; (iv) Dr. Pandya nevertheless denied a request from Mattox's on-site medical providers to approve the continuation of Mattox's Ranexa prescription; and (v) this denial allegedly violated Mattox's constitutional right to be free from pain and suffering when relief was readily available. The grievance was sufficient to give prison officials

notice that Mattox was challenging Dr. Pandya's conduct in contributing to the denial of Mattox's Ranexa prescription, and to satisfy the gatekeeping requirements of MDOCPD130. We therefore hold that the district court erred in granting summary judgment on Mattox's claims against Dr. Pandya.

### 2.        Dr. Jordan and Dr. Borgerding

Next, Mattox argues that a jury could find that his fourth and fifth grievances properly exhausted his claims against Dr. Jordan and Dr. Borgerding. We agree.

Mattox's fourth grievance specifically named Dr. Jordan, noted that Mattox had been prescribed Ranexa many times by outside doctors, and requested that prison medical staff provide him with Ranexa. Mattox's fifth grievance complained that an unnamed RMO had contributed to the Ranexa denial, and alleged that the denial violated Mattox's constitutional right to be free from gratuitous pain and suffering. In Mattox's step two grievance appeal, Mattox clarified that the unnamed RMO was Dr. Borgerding. A reasonable jury could find that this information was sufficient under the circumstances presented here to satisfy the relatively minimal gatekeeping requirements of MDOCPD130. *See Reed-Bey*, 603 F.3d at 324 (observing that a prisoner complies with MDOCPD130 by specifying the "'[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance" (citation omitted)); *see also Woodford*, 548 U.S. at 90 (a grievance is sufficient if the inmate follows the "critical procedural rules" set out by the prison's grievance policy). Accordingly, we hold that the district court erred in determining that: (i) Mattox's failure to exhaust administrative remedies as to Dr. Jordan is apparent from the face of Mattox's complaint; and (ii) no reasonable jury could find that Mattox exhausted his remedies as to Dr. Borgerding.[7]

---

[7]We note that our opinion only holds that Defendants are not entitled to summary judgment on their administrative exhaustion defense. The issue of whether there are genuine issues of material fact going to the merits of Mattox's claims is not before us in this appeal. Our opinion should not be misconstrued as precluding the district court from considering any other properly filed dispositive motions on remand.

## II.     Claims Against P.A. Neff

### A.     Standard of Review

We review *de novo* the district court's dismissal of a deliberate indifference claim on the pleadings.  *See, e.g.*, *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

### B.     Analysis

Mattox's claim against P.A. Neff alleges that she was deliberately indifferent to his serious medical needs by failing to send him to the emergency room on the night of August 14, 2011, when Mattox presented to the prison infirmary with heart attack symptoms.  The district court dismissed Mattox's claim for failure to plead that Mattox suffered from an objectively serious medical condition on the night in question.  Mattox argues that the risk to his health was so patently obvious that he did not need to provide any proof that he actually suffered a cardiac event.  We disagree.

The Eighth Amendment prohibits prison officials and doctors from showing deliberate indifference to an inmate's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  In order to establish a deliberate indifference claim, the prisoner must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Put differently, a deliberate indifference claim "has objective and subjective components."  *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).  "The objective component requires the existence of a 'sufficiently serious' medical need."  *Id.* (quoting *Farmer*, 511 U.S. at 834).  "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'"  *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

This Circuit recognizes two theories under which a plaintiff can demonstrate the objective component of an Eighth Amendment deliberate indifference claim.  First, if a plaintiff suffered from a minor or non-obvious medical condition, he can show that his condition was objectively serious "if it is 'one that has been diagnosed by a physician as mandating treatment.'"

*Id.* at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Second, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,'" the plaintiff can meet the objective prong by showing "that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 899–900 (quoting *Gaudreault*, 923 F.2d at 208).

Citing *Blackmore* and our decision in *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311–12 (6th Cir. 2005), Mattox argues that: (i) his heart attack symptoms were so obvious that he does not need to show medical evidence verifying that he needed treatment; and (ii) there is no requirement that he show that he was *actually* suffering from a serious medical condition as long as he can show that prison staff failed to respond to circumstances that created a substantial risk of serious harm.

Mattox's arguments flatly misstate the law. As we explained in *Blackmore*, when a plaintiff can show that his need for medical care was so obvious that even a layperson should recognize it, he is not required to provide objective evidence that he needed medical care at the time he was experiencing the symptoms. *Blackmore*, 390 F.3d at 899–900. This makes sense— if a plaintiff has been stabbed, for instance, he should not require a doctor's diagnosis of internal bleeding before prison staff should be expected to tend to his medical needs. But the "obvious malady" theory does not excuse a plaintiff from showing that he actually needed medical care. As *Blackmore* itself recognizes, a plaintiff proceeding under this theory must still show "*that he actually experienced the need for medical treatment*, and that the need was not addressed within a reasonable time frame." *Id.* at 900 (emphasis added).

As the district court correctly noted, it is clear from the face of Mattox's complaint that he did not actually need medical care on August 14, 2011. The complaint does not allege that Mattox suffered a heart attack that night. Moreover, Mattox was seen by a prison doctor on August 15, 2011, who did not prescribe him any medication. He was then sent to a hospital for consultation with a cardiologist, who also apparently did not prescribe Mattox any medication. When, in April 2012, Mattox received a cardiac catheterization test, it did not show a serious heart problem. Because Mattox has not demonstrated that he actually suffered a heart attack or

some similarly serious problem on August 14, 2011, the district court correctly determined that he has not pleaded an objectively serious medical condition.

The cases Mattox relies upon in support of his argument are distinguishable. In *Estate of Carter*, the plaintiff actually suffered a fatal heart attack. 408 F.3d at 306. Similarly, in *Westlake v. Lucas*, 537 F.2d 857, 858–60 (6th Cir. 1976), the plaintiff suffered from a formally diagnosed medical condition—a bleeding stomach ulcer—that went untreated. Finally, in *Helling v. McKinney*, 509 U.S. 25, 33 (1993), the Supreme Court recognized that prisoners can state a deliberate indifference claim for future, as well as present harm. However, the plaintiff in *Helling* alleged that he was being regularly exposed to toxic tobacco smoke, while Mattox has not alleged any similar ongoing injury here. *Id.* at 28–29.

Accordingly, we hold that Mattox failed to plead that he suffered from an objectively serious medical condition on August 14, 2011, and that his claim against P.A. Neff was therefore properly dismissed. Because Mattox did not plead an objectively serious medical condition, there is no need to analyze whether he sufficiently pleaded the subjective prong of his deliberate indifference claim.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the dismissal of Mattox's claims against P.A. Neff, and **REVERSE** the dismissal of his claims against Dr. Pandya, Dr. Jordan and Dr. Borgerding. We **REMAND** for further proceedings consistent with this opinion.