RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

RANDY ERICKSON,

　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

GOGEBIC COUNTY, MICHIGAN, et al.,

　　　　　　　　*Defendants*,

SCOTT VOIT,

　　　　　　　　*Defendant-Appellant*.

No. 24-1311

─────────────

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:22-cv-00067—Paul Lewis Maloney, District Judge.

Argued:  December 12, 2024

Decided and Filed:  April 7, 2025

Before:  SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:**  Kali M. L. Henderson, SEWARD HENDERSON, PLLC, Royal Oak, Michigan, for Appellant.  Shawn C. Cabot, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellee.  **ON BRIEF:**  Kali M. L. Henderson, T. Joseph Seward, David D. Burress, SEWARD HENDERSON, PLLC, Royal Oak, Michigan, for Appellant.  Jonathan A. Abent, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellee.

———————————

**OPINION**

———————————

MURPHY, Circuit Judge.  This appeal asks whether a corrections officer violated the Eighth Amendment both by using excessive force and by failing to obtain medical care afterward.  The officer threw an inmate to the ground and kneed him in the back for failing to comply with an order.  The district court denied the officer's qualified-immunity defense at the summary-judgment stage.  We agree with the district court that a reasonable jury could find that the officer maliciously used force to retaliate against the inmate for his disrespectful language.  And this version of the facts would show that the officer violated clearly established law.  On the other hand, we disagree with the district court that a reasonable jury could find that the officer deliberately disregarded the inmate's medical needs.  No evidence suggests that the officer even knew of the inmate's injuries.  All told, then, we affirm in part and reverse in part.

I

Randy Erickson pleaded guilty to operating a vehicle while intoxicated.  In February 2020, he was serving his sentence for that crime at the Gogebic County Jail in Michigan's Upper Peninsula.  The Gogebic County Sheriff's Office operates this facility.

On February 18, Erickson looked forward to seeing his family because "it was visiting day."  Erickson Dep., R.114-5, PageID 2168.  He spent most of that day playing cards with fellow inmates in a shared cell.  Deputy Sheriff Scott Voit came by the cell around 7:10 p.m. before Erickson's family had arrived.  Voit spotted an "orange peel in the hallway" and asked the inmates to identify who had thrown this trash on the ground.  *Id.*  Erickson antagonistically told Voit: "If you were doing your job, you would know who threw the orange peel in the hallway."  *Id.*, PageID 2169.  Voit responded to Erickson's rude comment by telling him that his "visits" were now "gone."  *Id.*  The deputy then walked away.

Voit's punishment upset Erickson.  To take out his anger, Erickson repeatedly hit and kicked the door to the cell.  He also aggressively pulled the inmate phone off its base as if trying to break the cord.  And he picked up the large "boat" (a "mattress container for an extra person in

the cell") and threw it at the door.  Voit Dep., R.114-6, PageID 2222.  Yet Erickson soon recognized the "childish" nature of these acts, so he put the phone and boat back in their proper locations.  Erickson Dep., R.114-5, PageID 2169.

Voit watched Erickson's erratic behavior through the jail's video system.  He visited the cell again.  Voit opened the cell door and asked Erickson if he needed a "time out."  *Id.*  Erickson responded: "No, I need my f**king visits.  I didn't do anything wrong."  *Id.*  Voit ordered Erickson out of the cell and commanded him to put his hands on the wall of a long hallway.  *Id.* Voit proceeded to handcuff Erickson's hands behind his back and walk him to a holding cell. Erickson complied with Voit's instructions without resistance.

Once the men entered the holding cell, a video (without audio) recorded the events that took place over the next minute.  Voit walked Erickson to a mattress raised about a foot above the floor next to the cell's back wall.  To remove the handcuffs, Voit asked Erickson to kneel on the mattress while facing the wall.  Erickson placed his left knee on the mattress with his left foot raised, and he pressed his right knee against the side of the mattress with his right foot touching the ground.  Voit again asked Erickson to kneel.  Erickson lowered his head so that his body was now at a 90-degree angle at his waist.  His right foot remained touching the floor.

At this point, Voit suddenly threw the still-handcuffed Erickson to the ground by grabbing his right arm and swinging him around in a circular motion.  Erickson hit the ground on his knees.  Voit immediately dropped on top of (the much smaller) Erickson and started pulling him by the neck and wrist to get him to lie flat.  Voit quickly got Erickson on his side, but Erickson was still not on his stomach. So Voit began to pull him by the handcuffed arms, which caused Erickson's body to rub back and forth against the floor for another ten seconds.  Once Voit got Erickson on his stomach, Voit placed his knee on Erickson's back right below his neck. Voit kept his knee in this place during the forty or so seconds that it took him to uncuff Erickson's hands.  Voit then took his knee off Erickson's back and walked out of the cell.  An upset Erickson jumped up and shouted out the cell window.

The next day, another deputy came by Erickson's cell to discuss this incident. The deputy let Erickson know that he could file a complaint against Voit. And Erickson told this deputy that he needed medical attention.

Two days after the incident, however, Erickson still had not received any medical care. He thus completed a medical-request form asserting that Voit had "assaulted" him and that he continued to suffer neck, back, and wrist pain. Form, R.114-10, PageID 2270. This request led jail personnel to take him to a hospital. A doctor diagnosed Erickson with back contusions and a fractured upper rib near where Voit had placed his knee on Erickson's back. The doctor believed that these injuries would heal on their own and told Erickson to rest, take ibuprofen, and ice the affected areas. Erickson also claims that Voit's use of force damaged several teeth and required dental treatment. And he claims that the force left him with chronic shoulder and wrist pain.

The Michigan Attorney General's Office investigated Voit's conduct and charged him with assault and battery. The Gogebic County Sheriff also suspended him over this encounter. A jury later found Voit not guilty of the charged crime. So the Sheriff reinstated him to his deputy position. Even so, the Sheriff believed that Voit had not used the proper "communication" and "de-escalation techniques" during his confrontation with Erickson. Letter, R.114-16, PageID 2645. The Sheriff thus opined that Voit had brought "discredit" to the office. *Id.* He ordered Voit to take additional training. Voit chose to retire instead.

Soon after Voit's criminal trial, Erickson brought this civil suit under 42 U.S.C. § 1983 against several defendants. He eventually dismissed everyone but Voit. Erickson alleged that Voit had violated the Eighth Amendment both by using excessive force during the encounter and by acting with deliberate indifference to his medical needs after it. Voit moved for summary judgment on qualified-immunity grounds. A magistrate judge recommended that the district court deny the motion. The district court adopted this recommendation. Voit filed an immediate appeal. We review the denial of his summary-judgment motion de novo, considering the facts in the light most favorable to Erickson. *See Johnson v. Sootsman*, 79 F.4th 608, 614–15 (6th Cir. 2023).

II

The Eighth Amendment has been incorporated against the States by the Fourteenth Amendment. *See id.* at 615. Together, these amendments bar States from "inflict[ing]" "cruel and unusual punishments" on individuals convicted of crimes. U.S. Const. amend. VIII. And according to the Supreme Court, the word "punishments" covers more than the formal penalty that a court imposes. *Sootsman*, 79 F.4th at 615. It also covers informal harms that prison staff cause. *See id.* To show that these types of informal harms violate the Eighth Amendment, prisoners must establish both objective and subjective elements. *See id.* The harm must rise to a sufficient level of objective seriousness so that one can describe it as "cruel and unusual." *See id.* And a corrections officer must have acted with a sufficient level of subjective volition so that one can describe the officer's conduct as the "inflict[ion]" of "punishment[]." *See id.* Ultimately, though, the scope of these objective and subjective elements turns on the type of Eighth Amendment claim that a prisoner asserts. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Erickson pursues two Eighth Amendment claims here. He argues that Voit used malicious force by throwing him to the ground and jumping on top of him. *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). And he argues that Voit acted with deliberate indifference to his health by failing to seek medical care after using this force. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To overcome Voit's qualified-immunity defense to these claims, Erickson must show two things. *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). He must show that Voit's actions satisfied the objective and subjective components of his claims. *See id.* And he must show that any reasonable officer would have recognized that Voit's conduct violated the law. *See id.* at 63. Erickson has met this test for his use-of-force claim but not for his medical-needs claim.

A.  Use of Force

Erickson deserves a trial on his use-of-force claim because a reasonable jury could find that Voit gratuitously assaulted him. And once we accept this fact about Voit's state of mind, any reasonable officer would have known that his conduct was illegal.

### 1. Constitutional Violation

Under the first part of the qualified-immunity test, Erickson must show a constitutional violation. *See id.* at 62–63. When a prisoner asserts that a corrections officer has used force that violates the Eighth Amendment, the Supreme Court has adopted a "more demanding" subjective element but a "more relaxed" objective one. *Sootsman*, 79 F.4th at 615–16; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam).

*Subjective Element.* Corrections officers must regularly make quick decisions in dangerous situations to restore order or prevent a disruption. *See Whitley*, 475 U.S. at 320. The Supreme Court has thus refused to hold them liable when they honestly (if unreasonably) miscalculated the amount of force that a given situation required. *See id.* at 319. The Court has instead held that the use of force in prisons qualifies as the infliction of cruel and unusual punishment only if an officer uses the force "maliciously and sadistically to cause harm" to an inmate. *Hudson*, 503 U.S. at 7. It has also told us to consider several questions to decide whether a reasonable jury could find that an officer harbored this malicious mindset when using force on a particular occasion. *See id.*; *Sootsman*, 79 F.4th at 618. Our answers to these questions here show that a jury could find that Voit threw Erickson down and held him to the ground for no reason other than his malicious intent to harm Erickson because of his disrespectful behavior.

First consider the "need for application of force" against Erickson. *Hudson*, 503 U.S. at 7. True, officers "may use appropriate force to regain control of an aggressive inmate." *Cordell v. McKinney*, 759 F.3d 573, 581 (6th Cir. 2014); *see also Griffin v. Hardick*, 604 F.3d 949, 954–56 (6th Cir. 2010). And true, Erickson had caused a disturbance in the shared cell. He also had kept a foot on the floor despite Voit's request that he "kneel down." Erickson Dep., R.114-5, PageID 2169. Still, Erickson had calmed down in the shared cell—even recognizing the "childish" nature of his acts. *Id.* He also had calmly complied with Voit's order that he exit this cell, permitted Voit to handcuff him, and walked to the holding cell without resistance. Similarly, Erickson had not ignored Voit's requests to kneel in the holding cell. Rather, he had placed both knees on the mattress (albeit one more firmly than the other), and he had lowered his head and back to make it easier for Voit to uncuff him. And Erickson remained handcuffed with

his arms behind his back when Voit chose to use the force. A reasonable jury thus could find that Erickson did not pose much (if any) of a "threat" when situated in this precarious position. *Sootsman*, 79 F.4th at 619.

Next consider "the relationship between" the need for the force "and the amount of force used[.]" *Hudson*, 503 U.S. at 7. To gain control of an aggressive inmate, we have held that an officer may use modest force like a "leg-sweep" or a take-down maneuver. *Griffin*, 604 F.3d at 954–55; *Sootsman*, 79 F.4th at 620. Here, by contrast, Erickson was handcuffed and nonresistant. And even if Erickson had not followed Voit's command to kneel down with lawyerly precision, Voit's response to this alleged noncompliance looks extreme by comparison. Recall that Voit threw Erickson down, got on top of him, and pulled his body back and forth for ten seconds. Voit then drove his knee into Erickson's back for another forty or so seconds while Erickson passively lay on his stomach. A reasonable jury could find it hard to "reconcile" this significant force with the minor threat that Erickson posed. *Cordell*, 759 F.3d at 583.

Or consider the "efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. Voit made no such efforts. That is why the Gogebic County Sheriff criticized his actions. The Sheriff reasoned that Voit had taken Erickson to the floor within seconds of entering the cell and that proper "communication" and "de-escalation techniques" could have eliminated any need for that force. Letter, R.114-16, PageID 2645.

Lastly consider "the extent of injury" that a reasonable jury could find Voit inflicted. *Hudson*, 503 U.S. at 7. Voit fractured a rib and left Erickson with back bruises. Erickson has also asserted that Voit's actions damaged his teeth and that he has received medical care for lasting shoulder and wrist pain. That Voit actually harmed Erickson could further lead a reasonable jury to conclude that he intended to harm him. *See Cordell*, 759 F.3d at 582–83. In sum, a reasonable jury could find that Voit "maliciously and sadistically" used force to injure Erickson for no reason other than his disrespectful speech. *Hudson*, 503 U.S. at 7.

Voit responds that he took Erickson to the ground for safety reasons because Erickson failed to put both knees completely on the holding-cell mattress. And Voit adds that he tugged on Erickson's body and kneed him in the back because Erickson "wouldn't lay out flat" and was

"resisting." Voit Dep., R.114-6, PageID 2225. Perhaps a civil jury will believe him (as a criminal jury did). Yet a reasonable jury could also accept Erickson's claim that Voit did not subjectively believe he needed to use this force. So Voit must save these arguments for trial.

This case also does not resemble the main case that Voit cites: *Sootsman*. There, an inmate took a step toward an officer, and the officer responded by pushing the inmate against a wall and taking him to the ground. *See* 79 F.4th at 613–14. Unlike Erickson (who went to the hospital for a fractured rib), the inmate in *Sootsman* did not seek any immediate medical care. *Id.* at 619. And unlike Erickson (who had been handcuffed and passive), the inmate in *Sootsman* was "unhandcuffed" and aggressive. *Id.* at 619–20. Finally, unlike the minute-long force here (including a knee to the back), the force in *Sootsman* "lasted all of seven seconds[.]" *Id.* at 620.

*Objective Element.* If a reasonable jury could find that an officer used force in the required malicious way, a prisoner need not establish that the force caused any "significant injury" as an objective matter. *Wilkins*, 559 U.S. at 37; *see Hudson*, 503 U.S. at 8. The Supreme Court has reasoned that this type of malicious force "always" violates society's "contemporary standards of decency" and that a contrary rule would permit "diabolic or inhuman" treatment as long as it did not have lasting effects. *Hudson*, 503 U.S. at 9. At the same time, the Court has added that "*de minimis* uses of physical force"—such as a malevolent "shove"—rarely violate these societal standards. *Id.* at 9–10; *see Wilkins*, 559 U.S. at 37–38.

The caselaw clarifies this dividing line between actionable force and *de minimis* force. *See Sootsman*, 79 F.4th at 616–17. On the one hand, the Supreme Court has held that officers used actionable force when they kicked and punched an inmate, causing him to suffer "bruises, swelling, loosened teeth, and a cracked dental plate[.]" *Hudson*, 503 U.S. at 10. And we have held that an officer used actionable force when he rammed an inmate's head into a concrete wall, putting a large gash above his eye that required a hospital visit. *Cordell*, 759 F.3d at 577–79, 586. On the other hand, we have held that a guard used *de minimis* force by landing a "karate chop" on an inmate's neck that did not cause pain or leave a mark. *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008). And we have held that officers used *de minimis* force when they handcuffed inmates too tightly. *See Sootsman*, 79 F.4th at 617 (collecting cases).

When measured against this caselaw, Voit's conduct falls on the actionable side of the line. His use of force looks a lot more like the beating in *Hudson* than the karate chop in *Leary*. The force continued for about a minute—not for a second or two. It also caused Erickson pain that he complained about soon after the encounter. And the force resulted in a fractured rib, bruises on his back, damaged teeth, and chronic shoulder and wrist pain. *Cf. Hudson*, 503 U.S. at 10.

## 2. Clearly Established Law

Under the second part of the qualified-immunity test, Erickson must show that Voit's conduct violated "clearly established" law. *Wesby*, 583 U.S. at 63 (citation omitted). The law qualifies as clearly established only if every reasonable officer would have interpreted it to bar the challenged conduct. *See id.* This standard typically requires plaintiffs to identify the right on which they rely with a "high 'degree of specificity.'" *Id.* (citation omitted). A generic right (for example, the Fourth Amendment right against excessive force) often will not give officers proper notice about what they must do in a specific situation (for example, a domestic disturbance involving a knife). *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 3–7 (2021) (per curiam). So a plaintiff has articulated a principle at too high a level of generality whenever "the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the principle] was firmly established.'" *Wesby*, 583 U.S. at 64 (citation omitted). Except in an "obvious case," plaintiffs instead must rely on more specific principles from cases with similar facts. *Id.* (citation omitted); *see also Gambrel v. Knox County*, 25 F.4th 391, 400, 403 (6th Cir. 2022).

Erickson has satisfied these standards. To start, the legal rule that prohibits officers from using force "maliciously and sadistically to cause harm" may well be specific enough in this Eighth Amendment context. *Hudson*, 503 U.S. at 7. After all, what reasonable officers would believe that they could use force solely to inflict pain on prisoners for no penological purpose? At least when the force rises above the *de minimis*, any reasonable official should know that such malicious and sadistic conduct has violated the Eighth Amendment since *Hudson* in 1992. And keep in mind that we have concluded that a reasonable jury could find that Voit maliciously used force for no reason other than to injure Erickson. If so, "the unlawfulness" of his conduct would

"follow immediately from the conclusion" that *Hudson* clearly established a ban on malicious and sadistic force. *Wesby*, 583 U.S. at 64 (citation omitted).

Besides, Erickson has also identified an analogous case: *Cordell*. 759 F.3d 573; *see Rivas-Villegas*, 595 U.S. at 6. There, an inmate spoke to an officer in a disrespectful manner after the officer refused to sign him up for a haircut. *See Cordell*, 759 F.3d at 576–77. The officer decided to take the inmate to a holding cell in response. *Id.* at 577. He handcuffed the inmate and led him toward the cell in an escort position. *Id.* En route, the inmate allegedly "tensed up" and turned toward the officer in an apparent act of disobedience. *Id.* at 578, 581–82. According to the inmate, the officer retaliated by running him into a wall and putting a gash in his forehead. *Id.* at 577–78. When accepting the facts in the light most favorable to the inmate, we held that a jury could find that the officer harmed the inmate with "a malicious and sadistic" intent rather than for any safety reason. *Id.* at 584. And we found the force more than *de minimis*. *See id.* at 585–87.

Our holding in *Cordell* clearly established an Eighth Amendment violation here. In both cases, the inmate had an initial outburst but became compliant when the officer ordered him to a holding cell. And in both cases, the inmate engaged in, at most, modestly threatening acts while handcuffed (whether turning toward the officer or failing to put both knees fully on a mattress). In response, the officer used substantial force (whether running the inmate into a wall or throwing him down). And the officer's force caused an objective injury (whether a forehead cut or fractured rib). Because Erickson has identified a case with "'materially' indistinguishable facts," he has overcome Voit's qualified-immunity defense. *Gambrel*, 25 F.4th at 403–04 (citation omitted).

Voit tries to distinguish *Cordell* on the ground that a dispute of fact existed over the amount of force used in that case while "video evidence" recorded Voit's force in this one. Reply Br. 3–4. Yet this factual difference does not make a legal difference. Like the inmate's version of events in *Cordell*, the video here reveals that Erickson engaged in modest noncompliance and that Voit responded with substantial force. *Cordell* shows that these facts demand a trial.

Voit also suggests that his case warrants the same result as *Burnett v. Griffith*, 33 F.4th 907 (6th Cir. 2022).  There, an officer took an inmate "down to the floor with significant force" after the inmate tried to escape from the officer during an escort to a suicide-watch cell.  *See id.* at 909–10.  Even if this force violated the Eighth Amendment, we held, our decisions had not clearly established that conclusion.  *See id.* at 912–15.  In *Burnett*, the inmate was not "under control" when the officer used this force, and we found this fact an "important determinate" for distinguishing *Cordell*.  *Id.* at 912.  Here, by contrast, a reasonable jury could find that Erickson (like the inmate in *Cordell*) was under control.  So *Burnett* does Voit no good.

## B.  Medical Needs

We reach a different conclusion for Erickson's argument that Voit violated the Eighth Amendment by ignoring his medical needs.  As compared to the use-of-force claim, this medical-needs claim has a more demanding objective element and a less demanding subjective one.  Objectively, inmates must establish that they had "serious medical needs."  *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) (quoting *Estelle*, 429 U.S. at 106).  This standard requires them to show either that a doctor has diagnosed them with a condition requiring treatment or that they suffer from a condition that any layperson would recognize requires treatment.  *See Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897–900 (6th Cir. 2004).  Subjectively, inmates must establish that an officer acted with "deliberate indifference" to their serious medical needs.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted); *see Blackmore*, 390 F.3d at 895–96.  This standard requires them to show that an officer subjectively knew of (and consciously disregarded) the serious medical needs.  *See Farmer*, 511 U.S. at 837–39.

We need not decide whether Erickson's injuries rose to the objectively required level because he has not shown that Voit knew of and consciously disregarded his need for medical treatment.  For starters, Erickson cites no evidence to suggest that he ever asked Voit for medical care on the day of the incident.  And Voit had the next two days off work.  Voit thus did not return to the prison until after Erickson received care at the hospital.

Erickson instead argues that Voit's use of force alone should have put him on notice that Erickson required medical care. Yet Erickson did not have the types of injuries (such as a knife or a gunshot wound) that would have made it obvious to any onlooker that he needed immediate medical attention. *Cf. Heeters v. Bowers*, 99 F.4th 900, 916–17 (6th Cir. 2024); *Mattox*, 851 F.3d at 598. Indeed, after Voit left the holding cell, Erickson immediately jumped to his feet and paced around. He showed no visible signs of injury at that time. So Voit's use of force, by itself, could not allow a reasonable jury to find that he subjectively knew of Erickson's need for medical aid. Voit thus did not deliberately disregard that need.

\* \* \*

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.